LEWIS M. HERRMANN, PLAINTIFF-RESPONDENT, v. NEWARK MORNING LEDGER CO., A CORPORATION OF NEW JERSEY, SAMUEL I. NEWHOUSE, PHILIP HOCHSTEIN AND TOM GALLAGHER, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued October 7, 1957—Decided January 13, 1958.

422

424

Before Judges GOLDMANN, FREUND and CONFORD.

*Mr. Benjamin H. Chodash* argued the cause for defendants-appellants (*Mr. Harold Krieger,* attorney).

*Mr. Harry Green* argued the cause for plaintiff-respondent (*Mr. Gordon N. Lilwin,* attorney).

The opinion of the court was delivered by

Conford, J. A. D. This is an action for libel based on an article published May 29, 1955 in the *Newark Star Ledger,* a daily newspaper published by the defendant corporation. The article was written by the defendant Tom Gallagher, a reporter for the paper. There were countermotions by the plaintiff to strike the defenses in the answer, and by the defendants to strike the complaint, respectively. The trial court denied the defendants' motion, granted that of plaintiff, and entered interlocutory judgment of liability for compensatory damages against the defendants, directing the issues of the amount of such damages and the matter of punitive damages to be tried before a jury. At the trial, conducted before a different trial judge, the jury returned a verdict of $3,000 in favor of plaintiff for compensatory damages "and no punitive damages." This appeal by defendants raises questions concerning the correctness of the rulings on the pretrial motions and as to the admission and rejection of evidence at the trial.

The controversial article reads as follows:

### "LABOR EDITOR FACES QUIZ BY UNION
#### By Tom Gallagher

It's all being kept very hush-hush, but according to very reliable sources Lewis M. Hermann, labor paper editor, will be called on the carpet at a special meeting of ITU Local 103 here this week to explain how he obtained the credentials he presented as a delegate at the State Federation of Labor convention in Atlantic City last week.

While the same observers regard the move with some skepticism because of the long record in local labor circles of the new 103 president's Richard Ryan, Jr., as a super-progressive, they insist it is designed to add to the embarrassment Hermann already feels as a result of a speech at the convention.

#### Opposed Friends

Hermann, casting close ties of friendship to the winds, vigorously opposed State Fed officers Marciante and Murphy, in a debate on adoption of a resolution supporting Mayor Carlin's determination to oust teachers and other Newark City employees taking the Fifth Amendment in Red inquiries.

He was supported by two ITU members and opposed only by Leo Feeney, president of the Allied Printing Trades Council.

The same observers say the move to look into his credentials ostensibly to disavow his speech at the convention, is actually designed by critics within the union to unload him even though they do not disagree with his convention stand. They point out that Herrmann has been one of the most active leaders in one of the two factions which for years have divided the ITU not only in this state but nationally, and his opponents regard his present predicament as a heaven sent opportunity.

### Faces Quiz

Insiders indicate he will be questioned about previous as well as his 1955 credentials. They say he attended some conventions as a delegate from AFL Office Workers Local 32, and this year with the imprimatur of the State Printers League. He was not entitled to League credentials, they say, because he has not worked at the craft in years.

His inquisitors in 103, it is reported have requested a copy of the official minutes of the convention as transcribed by a private agency the State Federation retains for that purpose.

* * *"

The complaint recites that plaintiff is and was when the publication took place editor and publisher of a labor paper, the *New Jersey Labor Herald,* and an active member of Newark Typographical Union No. 103 and the Union Printers League of New Jersey; that he was a delegate from said Union Printers League to the State Federation of Labor convention at Atlantic City in May 1955; and that he was not at said times a member of Office Workers Union, Local No. 32, affiliated with the American Federation of Labor, and did not at said times attend any conventions as a delegate of that union. The complaint charges the article to be false and defamatory "of and concerning the plaintiff as a labor representative, labor paper editor and individually." There is no allegation that the article was defamatory in any other specific respect.

The answer of the defendants admits the publication, and, so far as presently material, sets forth as separate defenses that: (first) the language published does not "admit of the defamatory sense averred to in the complaint"; (sixth) the alleged statements were true and within the bounds of fair comment; and (seventh) that the words and statements were true "except that through a typographical error

AFL Office Workers Local 32, was designated instead of Office Employees International Union Local #20, formerly Local #19840." After exchange of interrogatories and answers thereto between the opposing sides, plaintiff moved, in effect, to strike the defenses in the answers for insufficiency in law and for entry of judgment interlocutory as to liability in favor of plaintiff, and defendants moved to strike the complaint for the reasons, *inter alia*, that the complaint (1) "fails to set forth alleged false portions of the said libel," (2) is not libelous *per se* and "fails to set forth any innuendoes or contrary meaning to that set forth in the article," and (3) "is not defamatory *per se* and no special damages are shown." The trial court rendered an oral opinion disposing of the cross-motions. It denied the defendants' motion summarily. On the plaintiff's motion it held: (1) the complaint sufficiently stated a claim upon which relief could be granted; (2) to the extent that the defenses relied upon truth of the publication they were deficient because falsity "of a part of the libel" was admitted in the answer and truth must be pleaded as to the entirety of the publication; (3) that the publication was a libel *per se*, "particularly" in respect to the matter of plaintiff's credentials to attend the convention, leaving open only the question of assessment of damages by a jury; and (4) that the other defenses bore only upon damages, not liability. Interlocutory judgment in the tenor recited above was accordingly entered.

The jury trial proceeded upon the basis of a pretrial order entered the day the motions were decided in which plaintiff's contention as to the defamatory nature of the publication was that the article charged "that plaintiff improperly obtained credentials as a labor delegate, that the manner of obtaining the credentials was to be the subject of inquiry," that the article by reason thereof held him up to shame and ridicule and "injured his reputation as a labor paper editor." There was no reference to the statements in the article pertaining to plaintiff's position on the resolution concerning ousting Newark city employees.

The facts relative to the admission and rejection of evidence at the trial will be referred to *infra,* when the pertinent legal questions are discussed.

We note, preliminarily, that our study of this appeal elicits a number of legal questions not raised in the arguments. We deal only with issues argued or which have impressed us as essential for consideration and determination in the interest of substantial justice both upon this appeal and upon the retrial which our determinations will entail.

## I.

Defendants argue, first, that the trial court erred in holding that the publication was libelous *per se,* using that phrase in the sense of libelous on its face as a matter of law. The substance of their argument is confined to the "sting," or alleged derogatory imputation of the article, in respect of the investigation of plaintiff's credentials as a convention delegate. We must here point out that at the trial of the cause and in the plaintiff's brief upon this appeal considerable evidence and argument, respectively, were adduced addressed to the theory, absent from the complaint, pretrial order and interlocutory adjudication, that the publication was defamatory in imputing to plaintiff a position on the resolution relative to the ousting of Newark city employees "taking the Fifth Amendment in Red inquiries" which "associated him with Communism." As defendants have made no specific point as to the deficiencies of the complaint if taken to charge defamation in that respect, we reserve the discussion of that question for our consideration (*infra,* V) of the extent of the issues to be litigated on the remand.

As to the subject of credentials, defendants contend the article does not necessarily impute wrongful or illegal conduct to the plaintiff, that there are no innuendoes in the complaint, and that a jury could conclude it meant only that there was a technical deficiency in plaintiff's credentials to attend the convention. However, it is the function of

the court, not the jury, in the first instance to determine whether the language used is reasonably susceptible of a defamatory meaning. *Leers v. Green,* 24 *N. J.* 239, 255 (1957). Only if the language is ambiguous in the sense of being reasonably subject to either an innocent or a defamatory meaning, as determined by the court, does the jury decide as a question of fact whether the readers of the publication understood the language in its defamatory sense. *Ibid.,* 24 *N. J.* at *page* 253; 3 *Restatement, Torts,* § 614; 1 *Harper and James, Law of Torts* (1956), § 5.29, *p.* 463. But where the publication is not reasonably susceptible of a non-defamatory signification it is libelous as a matter of law and the declaration of that conclusion is obviously for the court alone. *Utah State Farm Bureau Federation v. National Farmers Union Service Corp.,* 198 *F. 2d* 20, 33 *A. L. R. 2d* 1186 (10 *Cir.* 1952); *Wright v. Farm Journal,* 158 *F. 2d* 976 (2 *Cir.* 1947); and see *Washington Post Co. v. Chaloner,* 250 *U. S.* 290, 293, 39 *S. Ct.* 448, 63 *L. Ed.* 987; *Rogers v. Courier Post Co.,* 2 *N. J.* 393, 404 (1949). Thus, if the tenability of the construction of the article advanced by defendants were substantively advantageous to their defense, it would be for the court in the first instance to declare whether the language reasonably could sustain it. However, there is doubt as to the legal materiality of the version submitted. In essence, defendants argue that under their interpretation of the article no "immoral" or "illegal" conduct is imputed to the plaintiff.

But it was not requisite that the article should necessarily impute illegality or immorality to plaintiff to constitute defamation. A common classification of slanderous imputations actionable *per se* is that as to those which affect another's business, trade, profession or office. 3 *Restatement, Torts,* § 569, *comment (e), p.* 168; 1 *Harper and James, op. cit., supra,* § 5.12, *p.* 381; *Ramsdell v. Pennsylvania R. Co.,* 79 *N. J. L.* 379 (*Sup. Ct.* 1910); *Feder v. Herrick,* 43 *N. J. L.* 24 (*Sup. Ct.* 1881); Annotation, 6 *A. L. R. 2d* 1008, 1020 (1949). *A fortiori* is such a

written imputation libelous. The language in question must be construed according to the fair and natural meaning which will be given it by reasonable persons of ordinary intelligence. *Dressler v. Mayer,* 22 *N. J. Super.* 129, 135 (*App. Div.* 1952). The publication here in question plainly imputes that plaintiff had for years and in 1955 attended conventions with improper or undue credentials and was to "be called on the carpet" to defend himself on the charge before a union local. This, we think, did subject him "to a loss of the good will and confidence entertained towards him by others," *Leers v. Green, supra* (24 *N. J.* at *page* 251), specifically those who knew him as prominent in the labor movement of the state. This would be so regardless of plaintiff's subjective behavior in obtaining the credentials. The mere imputation that he was not entitled to them impugns his status as a labor leader. A harmless interpretation of the language was not reasonably inferable. We therefore hold the trial court correctly determined the publication to be libelous as a matter of law in this regard.

## II.

Defendants' second, and, we think, well-founded, contention is that the trial court took too narrow a view of the law concerning the pleading of truth as a defense to a complaint of libel. As noted above, defendants pleaded the truth of the publication except only in respect of the identification of the office workers union local which the article said plaintiff had represented as a delegate in prior years. Solely because of the concession in the answer as to the error in that regard, the trial court struck the defense of truth and also the defense of fair comment because of the constituency of truth as a part of that defense. In support of its action the trial court invoked the principle "that truth must be pleaded in its entirety." We find the ruling not warranted. The rule is that a false statement in the publication which is immaterial to, or does not go to the gist or sting of the libel does not render

an otherwise true statement defamatory. *Prosser, Torts* (2d ed. 1955), § 96, *p.* 632; 3 *Restatement, Torts,* § 582, *comment (e), p.* 218; *Emde v. San Joaquin County Central Labor Council,* 23 *Cal.* 2d 146, 143 *P.* 2d 20, 150 *A. L. R.* 916 (*Sup. Ct.* 1943). In *Leers v. Green, supra,* the court, in sustaining the trial court's determination that truth was shown, said (24 *N. J.,* at *p.* 257) : "There was no substantial misstatement. \* \* \* There was no material factual deviation from the truth." *Gatley, Libel and Slander* (4th *ed.* 1953), puts the matter thiswise (*p.* 485) :

"It is sufficient if the plea of justification covers 'the main charge or gist of the libel' ; the defendant need not justify immaterial details or mere expressions of abuse which do not add to its sting, or which would produce no effect on the mind of the reader different from that produced by the substantial part justified."

See also *Chandless v. Borg,* 24 *N. J. Super.* 73, 89 (*Law Div.* 1952).

In the present context, there was nothing defamatory about defendants' erroneous reference to Local No. 32 as the union which plaintiff had represented as a delegate, rather than No. 20. The gist or sting of the alleged libel was that plaintiff had attended conventions without proper accreditation and was being investigated therefor, whatever the identification of the particular union which he supposedly was representing. The error was immaterial in the sense presently significant. Plaintiff argues, however, that the error in question is material in that the gist of false accreditation would be given readier credence by those persons who in fact knew that he never was a member of Local No. 32. One response to this contention is that to the extent that the statement has a particular libelous effect in the respect stated, the complaint does not charge it, as it fails to set forth the facts extrinsic to the language of the article which produce the effect. But, more fundamentally, the position taken confuses the cause of action with the damages arising therefrom. The sting of the publication remains what it was stated to be above, and if it were true that plaintiff had

been attending conventions without proper credentials and was being investigated on that score, the publication would be legally justified and there would be no substantive liability on the part of the defendants no matter what additional damages plaintiff might sustain as a consequence of the enhanced possibility that readers would credit the publication. In any event, the present-day emphasis upon the attainment of substantial justice in litigation, and particularly in construction of pleadings, *R. R.* 4:8–6, should preclude the subversion of the defense of truth in a libel action upon so technical a ground as was here taken advantage of by plaintiff.

█ We think the same philosophy provides the answer to plaintiff's alternative contention that the defense of truth was defectively pleaded because the answer did not particularize the facts constituting the alleged truthful situation published. See *Fodor v. Fuchs,* 77 *N. J. L.* 92 (*Sup. Ct.* 1908); *Wilson v. Savino,* 10 *N. J.* 11 (1952). While the general rule is as represented by plaintiff there is a well-reasoned qualification to the effect that where the libelous charge is specific a general plea of truth will suffice. *Galley, op. cit., supra* (*p.* 487). It is where "the defamatory charges are general in their nature" that "the plea of justification must state specific facts * * *," *Fodor v. Fuchs, supra,* 77 *N. J. L.* at *page* 93 (involving charges that the plaintiff was a "scoundrel," a "wily and spurious banker," *etc.*). The stated qualification upon the rule accords with current concepts of notice pleading. See *Rogers v. Courier Post Co., supra,* 2 *N. J.* at *page* 400. And see *Jorgensen v. Pennsylvania R. Co.,* 38 *N. J. Super.* 317, 343, 348–349 (*App. Div.* 1955), certification denied 20 *N. J.* 308 (1956), where the plea of truth was made only in the pretrial order and there was a reversal for removing the issue from the jury's consideration.

 In the present case we are inclined to the view that further particularization in the answer of the truth of the imputations in the article would have been appropriate. We think, however, that the specificity of the charges con-

cerning plaintiff set forth in the publication was such that the assertion in the answer of truth as a defense, particularly where a specific exception and correction was made therein, as here, gave the plaintiff such general notice of what defendant was relying upon, in pleading truth, as should have precluded the summary striking of the defense, at least without leave to the defendants to plead over. Technicalities in present-day pleadings are deemphasized, R. R. 4:8–5. Pleadings are only a means toward the end of attainment of justice. If plaintiff required further particulars the practice rules provide many weapons for eliciting the information short of dealing sudden death to the defense.

Plaintiff suggests that any error in striking the defense of truth was not prejudicial since defendants failed to adduce evidence of truth either on the motion for summary judgment or at the trial. We cannot concur.

As to the motion, that was addressed (1) to the insufficiency of the defensive pleading as a matter of law and (2) to the lateness and insufficiency of certain answers to interrogatories as the basis for a requested order striking such answers and precluding the offering of certain proofs germane thereto. There was not raised by the motion any question as to the lack of a genuine issue of fact with respect to the truth of the matter published, and the disposition of the motion by the trial judge fails to indicate a contrary conception by him. The statement in the motion concerning reliance upon answers to interrogatories is plainly referable to that aspect of the motion which is addressed to answers to interrogatories. At the least, we cannot assume that defendants understood it as the basis for anything else, in the light of the structure of the motion as a whole.

Nor would we be justified in treating the suppression of the defense of truth as harmless on the basis of an appraisal of the trial evidence. At the trial the issue of truth bore only upon the matter of damages, not liability. The defendants are entitled to have a jury pass upon the truth of the publication in a trial of the issue of liability. We express no opinion as to whether the trial evidence (not all of it

printed) created a factual issue as to the truth of the contents of the article. Meagre evidence may suffice. *Cf. Jorgensen v. Pennsylvania R. Co., supra*, 38 *N. J. Super.* at *page* 348.

It results from the foregoing that the judgment under appeal must be reversed for the erroneous striking of the defense of truth.

It may be noted, in passing, that defendants advert in their briefs to a defense of fair comment but do not discuss it at any length. We therefore do not treat it here, leaving it for such consideration as may be found due at the retrial. The defense is revived for whatever it may be worth as a result of the reversal of the order for interlocutory judgment.

### III.

Defendants submit as an additional ground of appeal that the trial judge erred in refusing to grant their motion to strike the complaint.

One of the grounds of the motion was the failure of the complaint to specify the allegedly false portions of the article, citing *Chandless v. Borg, supra*. That case held that where the publication complained of consisted of a series of editorial comments upon a letter to the defendant newspaper publisher published at plaintiff's request, and the innuendo in the complaint charged defamation of the plaintiff by such comments in various respects as a lawyer, the plaintiff was under the necessity of indicating which specific comments he contended were false. The ruling is not applicable here. In the *Chandless* case there was uncertainty as to just which parts of the publication were contended to be false. A general allegation of falsity in the publication will ordinarily suffice. *Hand v. Hand*, 23 *N. J. Misc.* 118 (*Cir. Ct.* 1945) (Burling, C. C. J.). The same considerations of fair notice to the adversary as above discussed in connection with pleading truth should be applicable in this connection. Here it was clear that plaintiff was charging that each of the derogatory imputations in the article con-

cerning credentials was false. So far as concerns the suffi-
ciency of the present complaint, the general allegation of
falsity of the publication was adequate notice to defendant
of plaintiff's grievance in that regard.

The second basis for insufficiency of the complaint argued
is that the alleged libel was not "libelous *per se*" and that
no innuendoes are alleged. As to the sting in reference to
credentials, we have held above the article was libelous on
its face as a matter of law. No other aspect of the libel
is mentioned in this portion of defendants' argument. We
shall hereinafter consider the question as to whether the
absence of a plea of special damages is fatal to that aspect
of the cause of action which may be founded upon the
statement in the article as to plaintiff's position on the
resolution aforementioned at the 1955 convention of the
State Federation of Labor.

## IV.

Each of the remaining questions involved in this appeal is
related to the sting of the publication in respect to plain-
tiff's position at the 1955 convention on the Newark reso-
lution, which, it is contended, had the defamatory effect of
associating him with Communism. But a proper disposition
of these questions at this time becomes a matter of some
complexity because of the way the issue was handled in
advance of trial and at trial, as well as upon this appeal.
 Although the gravamen of plaintiff's damage testi-
mony, as will be seen, arose from the alleged Communism
slur, reference to this sting is absent from the pretrial order
and apparently played no part in the determination of the
motion to strike the defenses. The pretrial order, as already
noted, is strictly confined to the grievance of the aspersions
cast upon plaintiff's credentials as a labor delegate. Yet
we cannot find any objection in the printed appendix on the
part of defendants to testimony showing damages in respect
of the Communism issue on grounds of departure from the
issues fixed by the pretrial order, but only for incompetency

as hearsay. Even on the present appeal defendants' objections to that testimony are confined to the hearsay question. Ordinarily these omissions might pose the question as to whether the issue as to the Communism sting was tried by consent, *R. R.* 4:15–2. But here, aside from the point that the question has not been argued, there could not have been any consent to trial of a *liability* issue on that sting since the issue as tried concerned only damages. On the further question in our minds, however, as to whether the case should, on the remand, go forward with respect to both aspects of the alleged libel, *i. e.,* as to credentials and as to plaintiff's position on the resolution, we conclude that in view of defendants' failure to take the position that the latter sting is out of the case because of the pretrial order, and the absence of any argument on the point, the case may properly proceed on the entirety of the publication. This course will entail amendment of the complaint in respects to be noted hereinafter.

## V.

Our discussion of the alleged libel in respect to plaintiff's position on the resolution is by no means to be taken as comprehensive of all questions which may arise relevant thereto on the retrial, in view of the hitherto exiguous consideration of that phase of the publication by the parties. The matters we discuss presently are considered the essential *minima* in aid of a retrial.

The first matter to be noted is that the article does not state whether plaintiff favored or opposed the controversial resolution. The invidious imputation asserted by plaintiff is that he opposed the substance of the resolution. (He contends he supported the policy of the resolution but only opposed the reference to Mayor Carlin therein.) But the article states only that plaintiff opposed the position of State Federation of Labor officers Marciante and Murphy, and it does not state what their position was, either. The complaint clearly requires amendment to state such ex-

trinsic facts, as, taken with the facts published, would support an allegation that the readership of the newspaper or a significant segment thereof, would understand the article to impute opposition by plaintiff to the substance of the resolution. *Prosser, op. cit., supra,* § 92, *p.* 582. This is the common law "inducement" of the complaint. We think good pleading, even in the modern sense, requires plaintiff also to set out an allegation, as he apparently contends, that the article, so understood, meant that he was a Communist or a Communist sympathizer—*i. e.,* the common law "innuendo" of the complaint. *Ibidem.* Since not all persons would so construe the article, even in the light of the facts mentioned above, fair notice to the defendants of the nature of the injury to reputation claimed, calls for that degree of specification in the complaint. *Cf. Stickles v. Manss,* 36 *N. J. Super.* 95, 103 (*Law Div.* 1955). If that had been done here in the first place some of the subsequent confusion of issues might have been obviated.

Under the rules of law discussed in I, hereinabove, it will be the duty of the court to declare whether the article, under the circumstances to be recited in the complaint amended as suggested, is reasonably susceptible of the defamatory meaning asserted by plaintiff, and, if so, whether it is libelous as a matter of law in that regard. In facilitation of the retrial we proceed to consider whether the article is susceptible of the defamatory imputation asserted (assuming the truth of the facts to be added by amendment) and whether it is libelous as a matter of law unless true or otherwise privileged.

There is no doubt that a publication charging of or imputing to one that he is a Communist or Communist sympathizer is libelous as a matter of law. 1 *Harper and James, op. cit., supra,* § 5.1, *pp.* 351, 352; *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 *U. S.* 123, 139, 71 *S. Ct.* 624, 95 *L. Ed.* 817 (1951); *Grant v. Reader's Digest Ass'n,* 151 *F. 2d.* 733, 735 (2 *Cir.* 1945), *certiorari* denied 326 *U. S.* 797, 66 *S. Ct.* 492, 90 *L. Ed.* 485 (1946); *Utah State Farm Bureau Federation v. National Farmers*

*Union Service Corp., supra;* see Annotation, 33 *A. L. R. 2d* 1196, 1208 (1954). But the article here complained of does not on its face make that imputation against plaintiff. The question, then, is whether it is susceptible of that meaning, if so charged by the plaintiff in the amended complaint. It would appear that this problem, although not identical, is closely cognate to that presented as to whether there is a tort when the words used are unambiguous in meaning but would be taken by some but not all persons in a given community to disparage the reputation of the plaintiff because of differing attitudes as to whether the conduct or character imputed to the plaintiff was reprehensible. There the most authoritative viewpoint is that the words are actionable if the plaintiff would be demeaned thereby in the eyes of a substantial number of respectable people in the community, whether or not all so-called "right thinking" people would take the same view. *Peck v. Chicago Tribune Co.,* 214 *U. S.* 185, 190, 29 *S. Ct.* 554, 53 *L. Ed.* 960 (1909); 1 *Harper and James, op. cit., supra,* § 5.1, 350: *Note, "Developments in the Law—Defamation,"* 69 *Harv. L. Rev.* 875, 885–887 (1956). In the oft-quoted language of Justice Holmes in the *Peck* case, "liability is not a question of majority vote" (214 *U. S.* at *page* 190, 29 *S. Ct.* at *page* 556). Contrast the English view, requiring that "the words must tend to lower the plaintiff in the estimation of right-thinking members of society generally," the court to declare what such members would approve, *Gatley, op. cit., supra, pp.* 16, 17.

 In the case before us the injury to reputation comes not through direct imputation of reprehensible conduct or character, but through popular inference of a subversive and hostile political philosophy from the taking of a particular position on a public question. The inquiry is, more precisely, whether to publish (in effect) concerning a labor editor that he opposed a resolution commending the policy of the mayor of Newark for the dismissal of teachers and other city employees pleading the Fifth Amendment in investigations of Communism was tantamount to portraying him as

a Communist or Communist sympathizer. The evidence at the trial was that a number of plaintiff's associates in organized labor, particularly in the typographical union, gained the impression that plaintiff was a "Red," "Commie," "Communist," *etc.*, from reading the article. In our judgment, the rule aforementioned is by analogy applicable in this situation. A realistic remedy in libel must be formulated in the light of community opinions and habits of deduction as they exist in fact with a significant segment of the public, particularly where plaintiff's reputation with that segment is professionally important to him. It may make little difference to the plaintiff as to why opposition to such a resolution lowers his reputation with these people. The fact of importance to him is that it does. We have no doubt that in today's climate of public opinion, which is one of the hard realities which one must take into account when he writes about another, *cf. Hartley v. Newark Morning Ledger Co.*, 134 *N. J. L.* 217, 224 (*E. & A.* 1946), a substantial number of people would infer from the article concerning the plaintiff what the testimony in the case indicates some of the witnesses did. Consequently, we here hold that while the publication in question (subject to the amendatory interpolation above referred to) would not degrade plaintiff in the eyes of some members of the general public, who would not draw the invidious conclusion (even as to the employees, much less the plaintiff; see *Laba v. Newark Board of Education*, 23 *N. J.* 364 (1957)), it unquestionably would with respect to other segments of the public. The substance of the article pertaining to the resolution is, therefore, defamatory as a matter of law, and it is actionable, subject to the defense of truth of the facts published (and such other proper defenses as may be formulated in the new pretrial order).

It will not, however, be within the jury's purview on the retrial to determine whether an imputation of opposition by plaintiff to the adoption of the resolution referred to in the article would be defamatory of plaintiff. Our determination that it would be is conclusive on that issue.

Where a court decides as a matter of law that a substantial segment of the public will regard otherwise unambiguous words to impute reprehensible conduct, status, or associations to the plaintiff—though other segments may not—the defamatory character of the writing is beyond the realm of the jury, just as in any other kind of court determination of law. Otherwise the jury would be in a position to veto the determination by the court.

The very nature of the tort of libel dictates this result. Actual harm to reputation need not be shown. Damage is presumed from the publication of a charge, the natural tendency of which is destructive of plaintiff's reputation. *Leers v. Green, supra,* 24 *N. J.* at *page* 251; 1 *Harper and James, op. cit., supra,* § 5.9, *p.* 373. Potential for harm, rather than actual harm, is the crux of the wrong. (*E. g.,* the fact that none of the readers of the publication actually believed the derogatory charges is immaterial. See *Prosser, op. cit., supra,* § 92, *p.* 579; *Modiselle & Adams v. Lorenze,* 163 *La.* 505, 112 *So.* 397, 399 (*Sup. Ct.* 1927).) And the natural tendency of a charge will be deemed destructive of reputation if, as we have already noted, a substantial and respectable segment of the community would regard the plaintiff with lessened esteem because of the charge. Therefore, once the court has determined that such a community segment exists, and that the article unquestionably makes the potentially harmful charge, the jury is left without anything to decide with respect to defamatory meaning. The fact that an equally significant or respectable community segment exists which would not draw the invidious inference from the charge is, as pointed out above, immaterial. Only where the publication is ambiguous—where there is reasonable doubt as to what the language can be interpreted as charging (as distinguished from whether an unambiguous imputation is defamatory)—does a jury question properly arise. See, for example, *Washington Post Co. v. Chaloner, supra* [250 *U. S.* 290, 39 *S. Ct.* 448] (whether publication of: "C. shot and killed G. while the latter was abusing

his wife" amounted, under surrounding circumstances, to a charge of murder, held for jury).

In the case before us there is no reasonable basis for any doubt that the publication (read with the extrinsic facts above referred to) imputes opposition by the plaintiff to the substance of the resolution at the convention, and there can be no jury issue in that regard. See *Crane v. New York World Telegram Corp.*, 308 *N. Y.* 470, 126 *N. E. 2d* 753, 52 *A. L. R. 2d* 1169 (*Ct. App.* 1955).

It may be further helpful on the retrial for us to point out that the now contended gist of the alleged libel in respect to the resolution is plaintiff's supposed opposition to the substance of the resolution at the 1955 convention. The complaint will presumably be amended to state that Messrs. Marciante and Murphy supported the resolution and that this fact was known to many readers of the article who therefore gained the impression from the article that plaintiff opposed the substance of the resolution, *i. e.*, favored retaining in city employ teachers and others who pleaded the Fifth Amendment in investigations of Communism. It will be for the jury to determine the facts as to what occurred at the convention and whether the article is substantially true as to what it states concerning the plaintiff's activities there.

## VI.

In their brief defendants have argued that since the article was not libelous *per se* there could be no cause of action because the complaint failed to allege special (pecuniary) damages. We have had no occasion hitherto in this opinion to discuss the rule relied on as we have disagreed with defendants' premise as to the non-libelous nature of the article in reference to the sting of defective credentials —the only aspect in which defendants invoked the principle. But if the case is retried on the additional issue of the sting in respect to the effect of the plaintiff's position on the resolution the supposed rule will become relevant, since, in

those jurisdictions which seem to follow it, it is generally stated as applicable where the words complained of are not defamatory on their face but only as against the background of the recital of extrinsic facts, *Prosser, op. cit., supra,* § 93, *p.* 588—and it is going to be necessary to recite extrinsic facts to spell out this particular sting (see V, *supra*). We have consequently given careful consideration to the question as whether special, or pecuniary, damages are properly regarded as essential to a cause of action in libel in such a case.

The term, libel *per se,* is an unfortunate source of much confusion. As a companion term to libel *per quod,* the latter taken as meaning requiring proof of special damage, it probably is a result of confusion with slander *per se* (imputations of crime, or diseases of certain kinds, or reflections in respect to one's business, trade, *etc.*), *i. e.,* words actionable without proof of special damage. 1 *Harper and James, op. cit., supra,* § 5.9, *p.* 373, *n.* 9. The terms "libel *per se*" and "libel *per quod*" have a long history of use to differentiate between writings defamatory on their face and those defamatory solely in the light of extrinsic facts. *Prosser, op. cit., supra,* § 93, *p.* 588; *Note,* 69 *Harv. L. Rev., op. cit., supra,* at *p.* 889. The foregoing distinction in terminology never had any relationship to a requirement of showing special damages. Any kind of libel was actionable at common law without proof of special damages. The very basis for the original distinction between written and spoken defamatory words in this respect was the greater capacity for permanent and widespread harm of language which is written or printed. *Gatley, op. cit., supra, pp.* 3, 4; see *Feder v. Herrick, supra* (43 *N. J. L.,* at *p.* 26). The law presumed damage from a defamatory writing, and this is still the law of England. *Gatley, op. cit., supra, p.* 2. The best modern American scholarship is in accord, and it does not matter whether the showing of the defamatory character of the words used requires reference to extrinsic facts. As stated by 1 *Harper and James, op. cit., supra,* § 5.9, *p.* 373: "The question is libel or no libel and once it is determined that words are defamatory, damage is 'presumed' as a matter

of substantive law." In accord: *Prosser, op. cit., supra,* § 93, *pp.* 587–588; *Gatley, op. cit., supra, pp.* 2, 73; 3 *Restatement of Torts,* § 569. And see *Note,* 28 *Colum. L. Rev.* 110 (1928); *Note,* 69 *Harv. L. Rev., op. cit., supra,* at *pp.* 889, 890. It is obvious that this point of view is the one consistent with good sense since the harmful impact of a libel upon its victim is not less in the particular instance where its odious meaning requires resort to extrinsic facts which are known to the recipient of the libel. *Ibid.* To require proof of pecuniary damages in such cases as a basis for a cause of action would be to emasculate the action without rational justification. It has well been stated of such a requirement: "There is no rhyme nor reason to this rule. Yet courts often resort to it, thus adding one more meaningless rule to the hopeless confusion of libel and slander law." *Cowan, "Torts,"* 9 *Rutgers L. Rev.* 157, 172 (1954).

Examination of the authorities mentioned will indicate that some courts still persist in the latter-day aberration of the original rule of liability and require proof of special damages where the statement of the cause of action involves reference to and proof of extrinsic facts. This is denominated a minority rule in 1 *Harper and James, op. cit., supra,* § 5.9, *p.* 373, *n.* 9, but in *Prosser* it is said to be the rule of a majority of courts, *op. cit., supra,* § 93, *p.* 588. It is our view that while references to such a rule can be found in the New Jersey cases, it has not been held to be the law of this state in any case requiring a determination of the point, and we are free to reject it as unauthoritative and unsound.

The older New Jersey cases clearly articulated the correct view that all libel is actionable, without proof of special damages. *Hand v. Winton,* 38 *N. J. L.* 122 (*Sup. Ct.* 1875); *Feder v. Herrick, supra.* For a recent reiteration of the rule of the older cases see *Stickles v. Manss, supra,* 36 *N. J. Super.* at *page* 99. But in *Empire Cream Separator Co. v. De Laval Dairy Supply Co.,* 75 *N. J. L.* 207, 210 (*Sup. Ct.* 1906), and *Walsh v. Trenton Times,* 124 *N. J. L.*

23 (*E. & A.* 1940), we find expressions to the effect that no special damages need be shown if the words published are "libelous *per se.*" These were in both instances *dicta* as the courts found the writings involved to be defamatory as a matter of law and required no showing of special damages. The opinion in the *Walsh* case betrays confusion between libel, and slanderous words actionable *per se,* as it cites as authoritative the decision in *Reilly v. Curliss,* 83 *N. J. L.* 77 (*Sup. Ct.* 1912), which dealt only with oral defamation. Moreover, it cites as authority for the proposition that there is no difference between slander and libel in this respect, *Odgers* on *Libel and Slander,* at p. *293 (edition not indicated). But that work (*2d ed.* 1887) expressly states that it is not necessary to prove special damages "in any action of libel" (*p.* 223 *297). Subsequent editions are to the same effect. See, *e. g., 6th ed.,* 1929, at *p.* 309. No exception is made for cases where extrinsic facts need to be alleged to show the defamation.

It must be recognized that in *Leers v. Green, supra,* language is used implying the notion that proof of special damage is required when extrinsic facts are required to reveal the libelous imputation of the words (24 *N. J. L.* at *page* 251), but the point was not involved in the decision of the case, the holding being that the words sued upon were fair comment as a matter of law. The texts by Odgers and Gatley, both cited by the court, are clear that special damages are never required to recover for any kind of defamatory libel. Damage is presumed in the case of all defamatory libels; not so, however, as to all slanders. See, *e. g., Galley, op. cit., supra, pp.* 2, 3, and *cf. p.* 73; *Odgers, Libel and Slander* (6th ed. 1929), *p.* 309.

Similarly, while this court, in *Bock v. Plainfield Courier-News,* 45 *N. J. Super.* 302, 309 (*App. Div.* 1957), referred to that version of the rule on this subject which would allow general damages for libel only where the publication is defamatory on its face, citing the *Leers dictum,* the case did not determine the point of law as the holding was that the publication was defamatory on its face.

The present case appears to be the first modern occasion that any New Jersey court has had to make a flat determination of the relevant rule of law in reference to a factual situation requiring such a determination; in any event, it is the first upon which a considered discussion has been had of the authorities and the merits of the contrasting versions of the rule. For the reasons already stated, we conclude and hold that it is not necessary to plead or prove special (pecuniary) damages to recover for the publication here complained of by mere reason of the fact that reference to extrinsic facts will be necessary to expose the defamatory impact of the article upon the plaintiff. General damages will be presumed, as in any case of a libel, or written defamation. *Foltz v. News Syndicate Co.*, 114 *F. Supp.* 599 (*D. C. S. D. N. Y.* 1953).

## VII.

Defendants have raised certain questions of admissibility of evidence. We need not consider all of them since there is to be a reversal for the other reasons indicated. Some points, however, are bound to recur upon a retrial, and these we proceed to consider.

▪ There was testimony by witnesses who said, in effect, the article led them to believe or suspect that plaintiff was a Communist sympathizer. There was also much testimony of declarations by others indicating (1) they entertained similar ideas after reading the article; or (2) that they considered the article as damaging to plaintiff. Of course this class of proofs was largely irrelevant under the issue fixed by the pretrial order (*supra,* IV), but it was objected to only as hearsay, and that is the only ground argued on the appeal.

There is a dearth of New Jersey authority on the admissibility problems involved. In *Bahrey v. Poniatishin,* 95 *N. J. L.* 128 (*E. & A.* 1920), witnesses were allowed to testify that they "had heard reports circulated concerning the statement [slander] * * *, that they had heard

them on the street and in the houses, they spoke about it" (95 *N. J. L.* at *page* 129). This was held admissible to prove the extent of circulation. It was obviously not hearsay, no specific declarations being involved. There is an indication that certain testimony was properly stricken as hearsay (95 *N. J. L.* at *page* 129), but the reference does not give the testimony and is therefore not helpful.

The entire subject of admissibility of testimony as to the impression or effect of the defamatory statement upon the minds of individuals is dealt with comprehensively in *Annotation,* 12 *A. L. R.* 2d 1005 (1950), based upon *Mattox v. News Syndicate Co.,* 176 *F.* 2d 897, 12 *A. L. R.* 2d 988 (2 *Cir.* 1949) (per L. Hand, C. J.), *certiorari* denied 338 *U. S.* 858, 70 *S. Ct.* 100, 94 *L. Ed.* 525 (1949). The *Mattox* opinion impresses us as so sound and peculiarly apposite to the important evidence problems here involved that we conclude there is more edification in a discussion of it *in extenso* than in cataloguing the vagaries of the rules applied in various jurisdictions.

The libel in *Mattox* was that plaintiff had once been a patient in a mental institution. The questioned testimony as to damages was, *inter alia:* (1) by witnesses that others had asked them after the article appeared whether plaintiff had been in an insane asylum; (2) by a witness that he had discussed the article with his family and they had taken its truth for granted; and (3) by the plaintiff as to what others had told her about the article. All of the testimony was held admissible. The court found the testimony relevant as rationally probative of those consequences of the publication for which the law holds the defendant liable, *i. e.,* the damage to plaintiff's reputation (imputations of mental illness falling in that sphere).

As to competency, as distinguished from relevancy, two main areas of dispute were: (1) the testimony of individuals that they thought the publication injurious to plaintiff's reputation; and (2) the hearsay nature of testimony by witnesses as to what third persons had told them of the impressions left in the declarants' minds. As to (1), the

argument *contra* was that allowance of testimony of individuals, although theoretically relevant, "complicates the issues too much" and the evidence must be confined to "general facts" (176 *F. 2d* at *page* 902). The court ruled such testimony admissible if kept within "proper bounds" and that that was a matter for the discretionary control of the trial judge. The injury suffered by the plaintiff is "the aggregate of the detractions which he may suffer in the minds of all who read the libel," which, theoretically, would be proved by the testimony of all whom it did so affect. This being impractical, substitutionary evidence generally consists of the plaintiff's standing, the circulation of the publication and other "general" considerations. But such evidence is not exclusive and a reasonable number of recipients of the libel may be called to say what impression it left on their minds. The limitation of such testimony to manageable proportions is within the discretion of the court (176 *F. 2d* at *page* 902).

As to (2), *supra,* while conceding that such testimony is generically hearsay, the court held it nevertheless admissible under the doctrine that when a person's feelings or beliefs are relevant, his declaration is competent evidence of their existence. The declarant's belief in the truth of the article sued on is, of course, relevant. The opinion develops the original confusion of this doctrine with the *"res gestae"* exception, but points out that it now rests on its own footing, citing 6 *Wigmore on Evidence* (3d ed. 1940), § 1731, *p.* 98.

The *Mattox* approach reflects the apparent weight of authority (12 *A. L. R. 2d, op. cit., supra,* at *pp.* 1012, 1013, in respect to testimony as to the impression of the defamatory matter on the minds of individuals; and, at *p.* 1018, as to the hearsay aspect). See also, generally, as to the "mental state" exception to the hearsay rule, *McCormick, Evidence* (1954), § 268, *p.* 567. The embodiment of the exception in the Uniform Rules of Evidence is Rule 63 (12). The drafters' comment is that it is almost universally accepted. See *Wigmore, op. cit., supra,* §§ 1725–31, *pp.* 79–98; *Hunter v. State,* 40 *N. J. L.* 495 (*E. & A.* 1878); *State*

*v. Ready,* 78 *N. J. L.* 599 (*E. & A.* 1910); *Schloss v. Trounstine,* 135 *N. J. L.* 11 (*Sup. Ct.* 1946).

Thus, so far as the questioned evidence in the present case constituted testimony by witnesses as to what effect the article had on their estimation of plaintiff or as to what third persons told witnesses concerning the effect which it had upon declarants' opinions of plaintiff, it was admissible. ▮ But two other types of evidence were received which are beyond the rule stated. One Martenuk testified that another person, upon seeing the article, said: "Boy, this story is loaded with dynamite. They better have the facts." Another declarant was quoted: "Gallagher better have his facts because this is pretty damaging." The admission of this testimony was erroneous. The opinion of a reader of an alleged libel as to its damaging or tortious nature or effect is clearly incompetent, whether as a witness or as a quoted declarant. *Bishop v. New York Times Co.,* 233 *N. Y.* 446, 135 *N. E.* 845 (*Ct. App.* 1922). Also incompetent was testimony by plaintiff that an anonymous caller on the phone told his wife "about that husband of yours, a Communist." The court denied a motion to strike it. This was hearsay not within the exception. It did not relate to the declarant's (wife's) state of mind concerning the effect of the article. See *McDuff v. Detroit Evening Journal Co.,* 84 *Mich.* 1, 47 *N. W.* 671 (*Sup. Ct.* 1890).

The cause is reversed and remanded, to be proceeded with in conformity with this opinion.