63 A.3d 246

WARREN HOSPITAL, THOMAS H. LITZ, ROBERT RUMFIELD, THEODORE RUHF, CASSANDRA M. GILL, GAIL NEWTON, ELIZABETH BAREN, WARREN HOSPITAL FOUNDATION, INC., AND WARREN HEALTHCARE, INC., PLAINTIFFS–APPELLANTS, v. JOHN DOES (1–10) (BEING FICTITIOUS NAMES FOR PERSONS NOT YET IDENTIFIED) AND JANE DOES (1–10) (BEING FICTITIOUS NAMES FOR PERSONS NOT YET IDENTIFIED), DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 18, 2012—Decided April 5, 2013.

226

Before Judges FISHER, WAUGH and ST. JOHN.

*Joseph A. Manfredi* argued the cause for appellants (*Manfredi & Pellechio,* attorneys; *Mr. Manfredi,* of counsel; *Mr. Manfredi* and *Laura M. Caillier,* on the brief).

*Brad M. Russo* argued the cause for respondents (*Russo Law Offices, LLC,* attorneys; *Mr. Russo,* of counsel and on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

In this interlocutory appeal, we review a trial court order that quashed a subpoena, served by plaintiffs on an Internet Service Provider (ISP), seeking information about the identity of one or more individuals who hacked into plaintiff Warren Hospital's intranet and circulated defamatory messages to the hospital's employees. We conclude that the trial judge erred in protecting the anonymity of the alleged hackers by strictly applying the procedures we outlined in *Dendrite Int'l, Inc. v. Doe No. 3,* 342 *N.J.Super.* 134, 775 *A.*2d 756 (App.Div.2001).

I

Plaintiffs allege that, on August 17, 2008, John Doe One, an anonymous hacker using IP address 75.126.xx.yyy,[1] accessed Warren Hospital's website and unlawfully and without permission logged onto the hospital's secure mailbox. John Doe One then composed and sent to all hospital employees an email with a link to a youtube video; both the emailed message and the linked video compared one of the individual plaintiffs to Adolf Hitler and other dictators. The same day, the hospital intranet was invaded by someone using a different IP address, 70.21.xxx.yy. Plaintiffs also allege that, on October 19, 2009, John Doe Two, an anonymous hacker using the IP address 72.94.xxx.yyy, accessed the hospital's website and unlawfully and without permission logged onto an employee's mailbox. John Doe Two then composed and sent an email to all hospital employees accusing more than one of the individual plaintiffs of sexual misconduct and other wrongdoing.[2]

---

[1] We have concealed this complete address and the others mentioned in this opinion.

[2] We will not repeat nor endeavor to paraphrase this message. It cannot seriously be argued that the defamation claim based on this message is vulnerable to summary dismissal.

Plaintiffs claim these statements are defamatory or otherwise tortious. In seeking redress for the alleged injuries to their reputations, plaintiffs commenced this action on September 1, 2010, and amended their complaint two days later; the amended complaint alleges the utterance by anonymous speakers of many other defamatory or tortuous statements. To obtain information about the true identity of the fictitious defendants, plaintiffs served subpoenas on four ISPs.

Current counsel for one or more anonymous but unidentified respondents[3] was given notice of the subpoenas and moved to quash. By the time the motion was heard, only the subpoena served on one of the ISPs, Verizon Communications, remained active. On February 27, 2012, the trial judge granted the motion to quash for reasons expressed in a written opinion. We granted plaintiff's motion for leave to appeal.

## II

The Internet's rapid, expansive and inexpensive means of communication permit anyone to "become a modern-day muckraker, exposing scandal and speaking out against fraud from the safety of [a] computer." Nathaniel Gleicher, Note, *John Doe Subpoenas: Toward a Consistent Legal Standard*, 118 *Yale L.J.* 320, 323 (2008); *see also Too Much Media, LLC v. Hale*, 413 *N.J.Super.* 135, 154, 993 *A.*2d 845 (App.Div.2010) (quoting Anne M. Macrander, Note, *Bloggers as Newsmen: Expanding the Testimonial Privilege*, 88 *B.U. L.Rev.* 1075, 1088 (2008) in referring to the solo blogger as the "lonely pamphleteer" of yesterday), *aff'd as modified*, 206 *N.J.* 209, 20 *A.*3d 364 (2011). But a click of the mouse may also instantaneously send defamatory messages to a wide audience, causing great harm to the reputation of others. To the extent these speakers choose to remain hidden behind their

---

[3] Plaintiffs' counsel unsuccessfully sought a representation from respondents' counsel that might reveal whether he represented a party with standing to quash the subpoenas.

computers, difficulties are posed for injured individuals who seek redress. As a result, we have minimized " 'the traditional reluctance' " for permitting filings against fictitious defendants and held that " 'the traditional enforcement of strict compliance with service requirements should be tempered by the need to provide injured parties with a forum in which they may seek redress for grievances.' " *Dendrite, supra,* 342 *N.J.Super.* at 151, 775 *A.*2d 756 (quoting *Columbia Ins. Co. v. seescandy.com,* 185 *F.R.D.* 573, 578 (N.D.Cal.1999)).

This salutary flexibility, however, must be weighed against competing constitutional interests. The First Amendment extends its protection to speech that is uttered anonymously, *Talley v. California,* 362 *U.S.* 60, 64, 80 *S.Ct.* 536, 538, 4 *L.Ed.*2d 559, 563 (1960); *see also Buckley v. Am. Constitutional Law Found.,* 525 *U.S.* 182, 197–99, 119 *S.Ct.* 636, 645–46, 142 *L.Ed.*2d 599, 613–14 (1999); *McIntyre v. Ohio Elections Comm'n,* 514 *U.S.* 334, 341–42, 115 *S.Ct.* 1511, 1516, 131 *L.Ed.*2d 426, 436 (1995), and when disseminated through the Internet, *Reno v. Am. Civil Liberties Union,* 521 *U.S.* 844, 885, 117 *S.Ct.* 2329, 2351, 138 *L.Ed.*2d 874, 906 (1997). And Article I, paragraph 6 of our state constitution is understood as providing an even broader right of free speech than recognized by the First Amendment by protecting speech "not only from abridgment by government, but also from unreasonably restrictive and oppressive conduct by private entities." *N.J. Coalition Against War in the Middle East v. J.M.B. Realty Corp.,* 138 *N.J.* 326, 352, 650 *A.*2d 757 (1994), *cert. denied,* 516 *U.S.* 812, 116 *S.Ct.* 62, 133 *L.Ed.*2d 25 (1995); *see also Dendrite, supra,* 342 *N.J.Super.* at 149, 775 *A.*2d 756. Consequently, in offering a forum for those aggrieved by anonymous defamatory statements, particular care must be taken to prevent the suppression of criticism or the flow of legitimate speech. *See New York Times Co. v. Sullivan,* 376 *U.S.* 254, 270, 84 *S.Ct.* 710, 721, 11 *L.Ed.*2d 686, 701 (1964) (recognizing the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open"). In crafting an appropriate

remedy, courts must sail between the Scylla of unmasking those who have said nothing actionable, leaving them vulnerable to powerful and vindictive plaintiffs with the ability to "seek revenge or retribution," *Doe No. 1 v. Cahill,* 884 A.2d 451, 457 (Del.2005), and, on the other hand, the Charybdis of permitting anonymity to become an impenetrable shield, leaving a defamed plaintiff without a remedy.

In *Dendrite,* we adopted a four-part test for determining whether and to what extent a plaintiff may obtain discovery designed to ascertain the identity of persons posting messages on an ISP message board. 342 *N.J.Super.* at 140, 775 A.2d 756. The test for that circumstance was designed to ensure that the authorization of discovery into an anonymous speaker's identity " 'will only be employed in cases where the plaintiff has in good faith exhausted traditional avenues for identifying a civil defendant pre-service and will prevent use of this method to harass or intimidate.' " *Id.* at 151, 775 A.2d 756 (quoting *seescandy.com, supra,* 185 *F.R.D.* at 578). Based on those circumstances, *Dendrite* requires that a plaintiff, who claims an injury based on an anonymous or pseudonymous statement on an ISP message board, must: (1) identify the fictitious defendant with "sufficient specificity" to allow for a determination as to whether the defendant "is a real person or entity" who may be sued; (2) demonstrate a "good-faith effort to comply with the requirements of service of process"; (3) present sufficient facts from which it may be concluded that the suit can withstand a motion to dismiss; and (4) provide "a request for discovery with the [c]ourt, along with a statement of reasons justifying the specific discovery requested as well as identification of a limited number of persons or entities on whom discovery process might be served and for which there is a reasonable likelihood that the discovery process will lead to identifying information about defendant that would make service of process possible." *Dendrite, supra,* 342 *N.J.Super.* at 151–52, 775 A.2d 756 (quoting *seescandy.com, supra,* 185 *F.R.D.* at 580).

The circumstances, here, however, are quite different from those that generated the test described above. Unlike *Dendrite,* we are not considering the anonymity of individuals posting statements on a public Internet message board.[4] Plaintiffs have presented sufficient facts from which we may assume that what John Does One and Two did electronically was no different than if they had broken into the hospital and spray painted their messages on the hospital's walls. We reject the argument that those who engage in this type of conduct are entitled to cling to their anonymity through a strict or overly-formulaic application of the *Dendrite* test.

In short, we are satisfied that plaintiffs are entitled to pursue discovery from Verizon or any other ISP to the extent the discovery might reasonably reveal the identity of those who used IP addresses 75.126.xx.yyy, 70.21.xxx.yy, or 72.94.xxx.yyy, or information reasonably designed to lead to other discoverable information. It is enough that plaintiffs have demonstrated (1) the speakers' unlawful or impermissible mode of communication, and (2) that the allegedly defamatory statements would survive a motion to dismiss.

As for the second aspect, we are satisfied that a defamation claim based on the August 17 and October 19, 2008 allegations would unquestionably survive a motion to dismiss. Plaintiffs assert that the statements are false and are harmful to their reputations because the statements tend to "lower[ ] the defamed person in the estimation of the community or deters third parties from dealing with that person." *Salzano v. N. Jersey Media*

---

4 Because of this significant difference between this case and *Dendrite,* we need not consider whether *Dendrite* imposes greater protection to an anonymous emailer than appropriate, as suggested in some other jurisdictions. *See, e.g., Cahill, supra,* 884 *A.*2d at 461 (adopting only the first and third *Dendrite* factors); *Krinsky v. Doe 6,* 159 *Cal.App.*4th 1154, 72 *Cal.Rptr.*3d 231, 243 (2008) (concluding that "the *Dendrite* test ... require[s] too much"). We hold only that the conduct of John Does One and Two calls for a less rigorous application of *Dendrite* 's general principles.

*Group Inc.,* 201 *N.J.* 500, 512, 993 *A.*2d 778 (2010), *cert. denied,* —— *U.S.* ——, 131 *S.Ct.* 1045, 178 *L.Ed.*2d 864 (2011). On a motion to dismiss, the court would be required to give the words in question the "fair and natural meaning which will be given [to the statements] by reasonable persons of ordinary intelligence." *Romaine v. Kallinger,* 109 *N.J.* 282, 289–90, 537 *A.*2d 284 (1988) (quoting *Herrmann v. Newark Morning Ledger Co.,* 48 *N.J.Super.* 420, 431, 138 *A.*2d 61 (App.Div.1958)). The statements in question, which we have not quoted in order to avoid their further dissemination, would undoubtedly survive a motion to dismiss on the record now before us.[5]

## III

We recognize, as respondents urge, that the lengthy amended complaint contains claims of other allegedly tortious statements uttered in ways and in places that may bring a future application for discovery closer to the circumstances in *Dendrite.* It suffices to say for present purposes that plaintiffs are entitled to pursue discovery into the identities of John Does One and Two as a result of their August 17 and October 19, 2008 actions. Respondents are troubled that this discovery may provide insight into the identities of some of those who made other anonymous statements referred to in the amended complaint. We find that to be of little concern. If the discovery we now permit reveals that John Does One and Two also uttered other statements in less wrongful or even completely innocent ways—or the revelation of their true identities may lead to a discovery of the identities of other anonymous speakers—then that is a consequence of John Doe One and John Doe Two's alleged wrongdoing. Having made a showing we find

---

[5] We also deem it important in a case like this that respondents' be given an opportunity to be heard on the right of discovery into their identities and the scope of that discovery. That opportunity was provided here and the positions of John Does One and Two have been considered. Although counsel for respondents has not represented whether or not he represents either John Does One or Two, in seeking the quashing of the subpoenas and in seeking to vindicate that result in this appeal, he has ably represented their interests.

sufficient for the discovery in question, plaintiffs should not be thwarted by the speculative consequence that other identities may be revealed.

We lastly observe that, contrary to other concerns urged by respondents, plaintiffs do not presently seek discovery as to speakers who uttered other statements referred to in the amended complaint. The record is not sufficiently developed to consider any other present or future discovery disputes. To the extent plaintiffs have sought relief beyond what we have permitted, our order granting leave to appeal was, in those other respects, improvidently granted. We hold only that plaintiffs are entitled to further pursue the Verizon subpoena in question.

The order under review is reversed and the matter remanded for further proceedings. We do not retain jurisdiction.