**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3263-23

CAROL JACKSON,

    Plaintiff-Appellant,

v.

RUTGERS UNIVERSITY,
KENNETH COP,
MICHAEL REIN,

    Defendants-Respondents.

_____

Submitted November 5, 2025 – Decided December 26, 2025

Before Judges Susswein and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-5012-20.

Eldridge Hawkins, LLC, and Cecile D. Portilla, LLC, attorneys for appellant (Cecile D. Portilla, of counsel and on the briefs).

Greenbaum, Rowe, Smith & Davis, LLP, attorneys for respondents (Maja M. Obradovic, of counsel and on the brief; Joel Clymer, on the brief).

PER CURIAM

This matter arises from plaintiff Carol Jackson's termination from her position as a security guard at defendant Rutgers University. Plaintiff was alleged to have struck a coworker and thereafter provided misleading information in the course of the internal investigations of the incident. Plaintiff brought suit against Rutgers and various university officials claiming discrimination based on race, age, and gender under the New Jersey Law Against Discrimination, N.J.S.A. 10:5–1 to –42 (LAD), hostile work environment, procedural and substantive due process violations, defamation, malicious prosecution, intentional infliction of emotional distress, and breach of the implied covenant of good faith and fair dealing. At the completion of discovery, the trial court granted summary judgment for defendants on all claims, finding plaintiff had not presented sufficient evidence to support her allegations. She appeals the May 10, 2024 order denying reconsideration of the March 11, 2024 Law Division order granting summary judgment dismissal and denying her motion for partial summary judgment and declaratory relief. After reviewing the record in light of the governing legal principles, we affirm.

I.

We discern the following pertinent facts and procedural history from the record.

2

A.

Rutgers University hired plaintiff as a security guard on September 12, 1995. Plaintiff is an African-American female. At the time of her termination, she was sixty-five years old.

On September 27, 2019, fellow security officer Steven Rodriguez filed a report with the Rutgers' Internal Affairs (IA) office alleging that plaintiff swung her arm and slapped him in the chest earlier that morning. The report details that prior to striking him, Rodriguez asked plaintiff "why [she] lie[d] and [told] people that [he] sign[ed] up for overtime and [did] not work the hours." Rodriguez told his superior about the slapping incident prior to filing the report. He also filed a report alleging harassment. According to his certification, plaintiff's demeanor toward him had become increasingly aggressive before the physical incident. He submitted a September 7, 2019 voicemail plaintiff left him stating, "I don't know why you [are] not answering your phone, you punk ass, you scary, damn."

On September 27, Michael Rein, Deputy Chief of University Police, emailed a copy of Rodriguez's complaint to Lisa Grosskruetz, Director of Rutgers' Office of Employment Equity (OEE). Plaintiff was informed of Rodriguez's complaint that same day. The record shows that OEE filed two

A-3263-23

formal complaints against plaintiff on behalf of Rodriguez detailing the workplace violence that was alleged in the report.[1]

Plaintiff was suspended with pay on October 1, 2019, pending the outcome of the IA's investigation. On the same day, plaintiff filed a grievance claiming that she was placed on suspension without just cause and without due process in accordance with her collective bargaining agreement (CBA) and requesting copies of the complaint and reports pertaining to the case.

On October 23, 2019, IA Lieutenant Duran completed his investigation, finding that the workplace conduct allegations were "not sustained" because there was not sufficient evidence to support or disprove Rodriguez's allegations that plaintiff struck him in the chest. However, Duran also found that plaintiff's denial was not credible. Duran found the allegation that plaintiff violated Directive 1:6-5(m)[2] was sustained. Duran explained in the confidential investigation findings sent to Rein:

> Before [plaintiff] was interviewed, she was given a copy of the Administrative Advisement Form[,] which she signed (as well as her union representative, Keith Russell). Number 3 of the form states, "I may be

---

[1] Neither complaint is dated; nor do they contain Rodriguez's signature.

[2] That Rutgers policy provides in pertinent part that "[e]mployees shall not knowingly lie, give misleading information, or falsify oral or written communications."

subject to departmental discipline for refusing to answer a question directly related to the performance of my duties, or for not answering truthfully." During the interview of [plaintiff], she was not truthful when she stated that she NEVER was within [fifteen] to [twenty] feet of [Rodriguez] and that she walked down the hallway by herself. She stated that she left [Rodriguez] near the Security Supervisor[']s Office which was contradicted in the video footage of that morning. It is unclear if [plaintiff]'s intention was to mislead the investigation by stating she was "NEVER" that close to [Rodriguez] or if she was just being untruthful; nonetheless [plaintiff's] testimony was not credible.

OEE conducted interviews and issued a memo on November 19, 2019, detailing its findings. Based on the interviews conducted, OEE concluded that plaintiff did in fact strike Rodriguez on his chest with her arm for the purpose of causing physical harm in violation of the workplace violence policy. The findings noted that section five of Rutgers' workplace violence policy provides:

[A]ny actual or threatening behavior of a violent nature, as understood by a reasonable person, exhibited by faculty, staff, student employees, or others within the scope of this [p]olicy. Examples of workplace violence include, but are not limited to:

1. Intentional physical contact for the purpose of causing harm (such as slapping, punching, striking, shoving, or otherwise physically attacking a person).

2. Menacing or threatening behavior (such as throwing objects, waving fists, damaging property, stalking, or otherwise acting in an aggressive manner; or, using oral or written statements specifically intended to frighten,

coerce, or cause distress) where such behavior would be interpreted by a reasonable person as being evidence of intent to cause physical harm to individuals or property or coerce behavior from individuals.

OEE's memo found Rodriguez's version of events to be credible as it was consistent with what he reported to his supervisors and to the police and was corroborated by surveillance video. Although the surveillance video footage did not capture the moment plaintiff allegedly hit Rodriquez, OEE found plaintiff was not credible, explaining:

> [Plaintiff] insists she was always at least twenty (20) feet away from [Rodriguez]. This is contradicted by the surveillance video, which clearly shows the [p]arties walking side by side within mere feet of each other. . . Further, if the parties were twenty (20) feet apart [plaintiff] says, then it is likely at least one of them would have been captured on camera.
>
> . . . .
>
> I do not find [plaintiff]'s statement that she did not know why [Rodriguez] called her a liar to be credible. [Plaintiff] acknowledged that [Rodriguez] accused her of telling people he signed up for overtime and then did not want to work. Therefore, even if [plaintiff] did not tell people this, she knew exactly why [Rodriguez] was calling her a liar.

On January 29, 2020, Deputy Chief Rein recommended disciplinary charges against plaintiff seeking her discharge from employment. Executive Director Kenneth Cop, Chief of Rutgers University Police, who claims he was

6

never aware of plaintiff's age or race, approved the charges against plaintiff and determined that she should be terminated.

On February 4, 2020, plaintiff received a pre-disciplinary conference notification letter from James Del Grosso, who supervises both plaintiff and Rodriguez. In the letter, Del Grosso notified plaintiff that the department was considering disciplinary action against her for the reasons set forth in an attached preliminary notice of disciplinary action (PNDA). The letter provided a time for a scheduled conference to give plaintiff "the opportunity to respond to these reasons." The PNDA, which was marked as a "DRAFT," included details of the complaint of workplace violence and the charges pertaining to misleading information plaintiff provided during the investigation. The draft PNDA concluded, "your employment with Rutgers University Police Department is terminated effectively immediately," and provided a URL link where plaintiff could check the status of her fringe and retirement benefits.

On February 12, plaintiff received a final notice of disciplinary action from Deputy Chief Rein, mirroring the draft PNDA. The final notice stated that the IA Bureau investigation sustained one violation of the written direction system, citing "Directive 1:6 - Uniform Standards of Conduct - Section: 1:6-7(a) - Employees shall not knowingly lie, give misleading information, or falsify oral

7

or written communications in any official report." The final notice detailed plaintiff's version of events regarding the distance between her and Rodriguez.

The final notice further informed plaintiff that the OEE conducted a concurrent investigation, which found that her statements lacked credibility and that a preponderance of the evidence supports the allegation that she struck Rodriguez on his chest with her arm for the purpose of causing physical harm. The notice explained, "On September 27, 2019[,] you engaged in an unprofessional and inappropriate interaction with a co-worker which deteriorated to a physical altercation. The investigations into this matter found your statements lacked credibility and moreover were inconsistent with the statements of witnesses, involved parties and forensic evidence."

On February 25, 2020, plaintiff's counsel sent a notice of appeal to defendants. Plaintiff claims she was never given any disposition on OEE's workplace violence charge.

## B.

On July 27, 2020, plaintiff filed a civil complaint against defendants in Superior Court, alleging: reckless and intentional infliction of severe emotional distress (count I); race, age, and gender discrimination, hostile work environment, retaliation, and aiding and abetting in violation of LAD, N.J.S.A.

10:5-12 (a), (d), (e), and (f), N.J.S.A. 10:5-4; N.J.S.A. 10:1 to 2, and N.J.S.A. 34:15-1 to -39.1 (count II); breach of the implied covenant of good faith and fair dealing/interference with plaintiff's beneficial economic position (count III); violation of the New Jersey constitution, art. 1, ¶ 1, 5, 18, and casting in a false light, defamation, and libel (count IV); and malicious prosecution, N.J.S.A. 2A:47A-1, 2 (count V).

On March 30, 2021, defendants filed a motion to dismiss plaintiff's complaint. On October 15, 2021, the trial court dismissed count I, count II as it relates to the retaliation LAD claim, and count III. Discovery ended on March 28, 2023. On July 28, 2023, defendants moved for summary judgment. On September 12, plaintiff cross-moved for summary judgment.

C.

On March 11, 2024, after hearing oral argument, the trial court denied plaintiff's cross-motion and granted defendants' motion in full. The court issued a thirty-five-page written opinion announcing its findings of fact and conclusions of law.

As to the LAD discrimination claims, the court found that plaintiff failed to rebut defendants' proffered legitimate business reasons, which were the alleged false statement plaintiff gave during their investigation. The court noted

9

that "[t]he legal standard does not permit the substitution of evidence of a purportedly flawed process, with nothing more, to substitute for evidence of prohibited discrimination." The court compared this case to <u>Meade v. Township of Livingston</u>, 249 N.J. 310 (2021), reasoning:

> Unlike in <u>Meade</u>, where there was evidence belying the proffered non-discriminatory motive such as one defendant's "issue with reporting to a woman" and that he "did not like reporting to a woman," <u>id.</u> at 331, [plaintiff] here has not proffered any evidence wherein a reasonable jury could find discriminatory intent behind the actions of defendants. She has thus failed to show by a preponderance of the evidence that either her race or her gender made a difference, let alone were motivating factors, in defendants' decisions.

The trial court further explained that:

> Syllogistically, [plaintiff] focuses upon perceived violations of defendant's policies and procedures and the civil service law in response to defendants' proffered non-discriminatory reasons for terminating her employment. [Plaintiff] argues that, because of perceived violations of these polices, she must have been discriminated against. Yet, there is no support for the argument to either deny defendant[s'] motion for summary judgment or to grant plaintiff's motion for summary judgment.

For similar reasons, the trial court found that plaintiff's hostile work environment claim also failed. The court stated that while plaintiff showed that she was part of a protected class, she "has failed to provide any evidence from

10

which a reasonable factfinder could conclude that racial or gender bias was the basis for defendants' conduct." Therefore, the court held, plaintiff did not meet the second prima facie element for hostile work environment.

The trial court then addressed plaintiff's constitutional claims, specifically that defendants violated Article I, Paragraphs 1, 5, and 18 of the New Jersey Constitution. Addressing Paragraph 5, the court explained:

> The court pauses here to summarily resolve this aspect of the complaint. As was detailed supra, there is no evidence in this record wherein [plaintiff] has offered any evidence in support of either racial or gender discrimination. As such, and incorporating all of the prior findings, the court is forced to conclude that summary judgment in favor of defendants is required as to this discrete component of [c]ount IV.

The trial court also "paused" to address Paragraph 18, stating:

> For the same reasons that the court has concluded that the more formal retaliation claim is subject to summary judgment in favor of defendants, the court is compelled to make the same finding as to this claim under Paragraph 18. There is simply no evidence in this record of any retaliatory conduct by defendants in response to any protected assembly, speech, or other aspects protected by this paragraph. Resultantly, the court is also constrained to grant summary judgment in favor of defendants as to this portion of [c]ount IV.

The court then focused on plaintiff's claims under Paragraph 1 with respect to the procedural protections granted to plaintiff by virtue of her

11

employment as a security guard. The court found that "the evidence in this record establishes that [plaintiff] was properly put on notice of the need to defend against allegations of providing false statements." The court reasoned:

> There is little question in this record that Rodriguez went through the process of filing the relevant complaint, despite plaintiff's complaints about his basis for doing so. His complaint, and the ensuing investigations by the various departments of defendants, properly put her on notice of the charges of alleged workplace violence. The same must be said for the allegations of lying during an investigation.
>
> . . . .
>
> [O]n February 4, 2020, [plaintiff] was served with the PNDA notifying her of the charges of both workplace violence and providing misleading information.

The trial court also explained:

> The court places little weight on [plaintiff's] allegations about the undated PNDA as it was accompanied by a dated letter. The February 4, 2020, letter from [Del Grosso] to [plaintiff] commences by stating, "I write to inform you that the department is considering disciplinary action against you for the reasons set forth in the attached Preliminary Notice of Disciplinary Action (PNDA)" (emphasis added)[.] There is no other PNDA in this record. [Plaintiff] herself fails to identify any other PNDA that she received which omitted the allegations of mendacious conduct. The court is obligated to view the evidence in the light most favorable to the non-moving party; however, the summary judgment standard requires the giving of all

reasonable inferences to the non-moving party. The court cannot find it reasonable to infer that there is some other PNDA that was provided to [plaintiff], which she herself has neither produced nor even testified as to the existence thereof. As such, the court concludes that she was timely served with the PNDA presented in this record.

With respect to plaintiff's defamation/libel claims, the trial court held that, even assuming the statements made by Rutgers and its officials are false and defamatory, plaintiff did not meet the publication requirement for a defamation/libel cause of action. The court noted that "both facts remain: a workplace violence complaint was made and that that same workplace violence complaint was not the cause for her termination." The trial court also found in favor of defendants on plaintiff's false light defamation claims, explaining that, in addition to failing to provide proof of publication, plaintiff failed to satisfy the actual malice standard, holding that a reasonable jury could not conclude by clear and convincing evidence that defendants published statements about her with actual malice.[3]

_____

[3] The trial court also rejected plaintiff's aiding and abetting claims, reasoning that because her other underlying claims have been dismissed, the allegations of aiding and abetting must be dismissed as well. We note that plaintiff does not address aiding and abetting in her appeal brief as a separate claim. "An issue that is not briefed is deemed waived upon appeal." New Jersey Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 (App. Div. 2015) (citing Fantis

13

D.

On March 29, 2024, plaintiff filed a motion for reconsideration of the summary judgment decision. The trial court found that plaintiff did not identify any new evidence not considered by the court and had not met the standard for reconsideration. The court reiterated that it considered plaintiff's arguments but sees them "in a different light." The court then specifically addressed two of plaintiff's points, explaining:

> The fact that Rodriguez did not sign the initial complaint for workplace violence, that the OEE investigated, the record to me clearly indicates that Rodriguez filed a workplace violence complaint against [plaintiff] via multiple channels, including a Special Officer Report, verbally to more than one person, and a police report with the [RUPD].
>
> There was a certification from Rodriguez in support of the motion that stated he did indeed file a workplace violence complaint against [p]laintiff. And I noted in my opinion at page [seventeen] there was little question in this record that Rodriguez went through the process of filing the complaint, despite the complaints about his basis for doing so. And once it's filed the Rutgers' policy require the OEE to investigate the workplace violence complaint, even though it was

Foods v. N. River Ins. Co., 332 N.J. Super. 250, 266–67 (App. Div. 2000); Pressler & Verniero, Current N.J. Court Rules, comment 4 on R. 2:6–2 (2015)).

14

not a signed complaint. That's pursuant to the regulations that would apply here.

> I . . . didn't see any evidence that . . . workplace violence complaints made against younger, Caucasian, or male security officers that were not directly filed with the OEE and that were not signed were not investigated. That simply wasn't in the record.

The trial court next addressed plaintiff's arguments concerning the surveillance video that was considered during the investigation of the workplace violence complaint. The court stated:

> Rutgers points out that regardless of the video footage, [plaintiff] was required to be truthful in her responses . . . of the fact that she didn't see it. The argument is that during the interview [p]laintiff was not forthright and chose to lie and embellish her physical proximity to Rodriguez. She insisted she was never within [fifty] feet of Rodriguez.

> The authentication of the video, I understand [plaintiff's] argument about it. However[,] I did review closely the certifications that were submitted. I do think that the videos were properly authenticated with chain of custody accounted for. So I don't think it was improper either to not show her before the questioning or to raise a question of fact as to the authentication or to the authenticity of those items. We have a very good record I believe about the chain of custody and the authentication from Armando Quinones, which the [c]ourt considered and which I still feel is proper.

This appeal followed. Plaintiff raises the following contentions for our consideration in her appeal brief:

15

POINT I

THE TRIAL COURT ERRED IN NOT FINDING THAT RUTGERS ENGAGED IN AN EGREGIOUS VIOLATION OF [PLAINTIFF]'S SUBSTANTIVE DUE PROCESS RIGHTS

    A. THE TRIAL COURT ERRED IN FAILING TO FIND THAT [PLAINTIFF] WAS DENIED OF SUBSTANTIVE DUE PROCESS BY BEING DENIED OF THE SUBSTANCE OF HER ENTITLEMENT IN RUTGERS' SUSPENSION POLICY

    B. PLAINTIFF WAS DENIED OF HER SUBSTANTIVE DUE PROCESS RIGHTS BY BEING ARBITRARILY TERMINATED AFTER THE INTERNAL AFFAIRS INVESTIGATOR EXPRESSED THAT HE DID NOT KNOW WHETHER PLAINTIFF INTENDED TO MISLEAD THE INVESTIGATION WHEN DIRECTIVE 1:6-5(m) REQUIRES INTENT

POINT II

THE TRIAL COURT ERRED IN FAILING TO FIND THAT RUTGERS ENGAGED IN AN EGREGIOUS VIOLATION OF [PLAINTIFF]'S PROCEDURAL DUE PROCESS RIGHTS AND OTHER RIGHTS SET FORTH IN ARTICLE 1 PARA 1, 5, 18 OF THE NEW JERSEY CONSTITUTION AND SHOULD HAVE PREVAILED ON COUNT I, COUNT II AND COUNT IV OF HER COMPLAINT

    A. PLAINTIFF WAS DENIED OF HER DUE PROCESS RIGHT TO NOTICE OF THE CHARGES RELATED TO LIES AND

16

MISREPRESENTATION BECAUSE SHE WAS NOT PRESENTED WITH DIRECTIVE 1: 6-5 (m) RELATED TO THIS CHARGE

B. PLAINTIFF WAS DENIED OF HER DUE PROCESS RIGHT TO DISCOVERY AND HER RIGHT TO CROSS EXAMINE WITNESSES

C. PLAINTIFF WAS DENIED OF PROCEDURAL DUE PROCESS BECAUSE THE DECISION TO TERMINATE HER WAS MADE BEFORE SHE WAS SERVED WITH A FINAL NOTICE OF DISCIPLINARY ACTION THUS THE COURT ERRED IN NOT AWARDING HER JUDGMENT ON COUNTS I, IV AND V

POINT III

THE [TRIAL] COURT ERRED IN DISMISSING THE PLAINTIFF'S COMPLAINT AND NOT FINDING THAT PLAINTIFF ESTABLISED AGE/RACE DISCRIMINATION UNDER THE []LAD

POINT IV

THE [TRIAL] COURT ERRED IN DISMISING PLAINTIFF'S CASE ON SUMMARY JUDGMENT BECAUSE THE DISMISSAL FAILED TO COMPLY WITH THE SUMMARY JUDGMENT STANDARD

A. THERE WERE CREDIBILITY ISSUES THAT PREVENTED RESOLUTION IN THE DEFENDANTS' FAVOR

POINT V

THE [TRIAL] COURT ERRED IN AWARDING SUMMARY JUDGMENT TO RUTGERS AND

SHOULD HAVE FOUND THAT IT BREACHED THE IMPLIED COVENENT OF GOOD FAITH AND FAIR DEALING

POINT VI

THE [TRIAL] COURT ERRED IN NOT FINDING THAT PLAINTIFF SATISFIED A CLAIM FOR COMMON LAW MALICIOUS PROSECUTION AND RECKLESS INFLICTI[O]N OF SEVERE EMOTIONAL DISTRESS UPON [PLAINTIFF]

POINT VII

THE [TRIAL] COURT ERRED IN FAILING TO FIND THAT DEFENDANTS CAST PLAINTIFF IN FALSE LIGHT, DEFAMED AND LIBELED HER

POINT VIII

PLAINTIFF WAS DENIED OF EQUAL PROTECTION BY BEING TERMINATED WITHOUT NOTICE AND WITHOUT RUTGER'S COMPLIANCE WITH ITS OWN POLICY REGARDING EQUAL TREATMENT OF EMPLOYEES

Plaintiff raises the following additional contentions in her reply brief:

POINT I

THE LAD CLAIMS SHOULD NOT HAVE BEEN DISMISSED

    A. DISCRIMINATION

    B. HOSTILE WORK ENVIRONMENT

18

POINT II

THE CONSTITUTIONAL COUNTS WERE INCORRECTLY DISMISSED

POINT III

PLAINTIFF'S DEFAMATION AND FALSE LIGHT CLAIMS ARE SUSTAINABLE

POINT IV

PLAINTIFF PROVED MALICIOUS PROSECUTION

POINT V

BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING WAS SHOWN

II.

We begin our analysis by acknowledging the foundational legal principles governing this appeal. Our review of a trial court's summary judgment decision is de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180 (2024). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). We "accord no 'special deference' to the 'trial court's interpretation of the law and the legal consequences that flow from established facts.'" Cherokee LCP Land, LLC v. City of Linden Plan. Bd.,

234 N.J. 403, 414-15 (2018) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

We add that a non-moving party "cannot defeat a motion for summary judgment merely by pointing to any fact in dispute." Brill, 142 N.J. at 529. Rather, "once the moving party presents sufficient evidence in support of the motion, the opposing party must 'demonstrate by competent evidential material that a genuine issue of fact exists[.]'" Globe Motor Co. v. Igdalev, 225 N.J. 469, 479-80 (2016) (alteration in original) (quoting Robbins v. Jersey City, 23 N.J. 229, 241 (1957)). Further, "when the evidence 'is so one-sided that one party must prevail as a matter of law' . . . the trial court should not hesitate to grant summary judgment." Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

Plaintiff argues as a general matter that the trial court misapplied the summary judgment standard. She contends that the court did not view the evidence in the light most favorable to her. She also claims that there were creditability issues that prevented summary judgment in defendants' favor.

We are unpersuaded. The trial court accurately articulated the legal standard for summary judgment at the beginning of its factual findings, stating, "[t]he court shall summarize the pertinent facts—viewing them 'in the light most

favorable to [plaintiff,] the non-moving party.' Globe Motor Co., 225 N.J. [at] 479 [] (quoting R. 4:46-2(c))." Further, the court made no credibility findings. We emphasize in this regard the issue before the trial court was not whether plaintiff had misled Rutgers officials during the internal investigation process or otherwise was not credible in responding to the allegations against her. Rather, the issue in this lawsuit is whether Rutgers or its officials discriminated against her or otherwise violated her rights. Based on our own review of the record, we are satisfied that trial court properly articulated and applied the summary judgment standard in making its factual and legal findings.

III.

We next address the disposition of the specific substantive counts raised in plaintiff's complaint. We first address plaintiff's contention that the trial court erred in finding that she had not established age and race discrimination. Under the LAD, our Supreme Court has adopted the three-part McDonnell Douglas[4] analysis as the proper method for analyzing LAD claims. El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 166 (App. Div. 2005). That test provides that:

> (1) the plaintiff must come forward with sufficient evidence to constitute a prima facie case of discrimination; (2) the defendant then must show a legitimate non-discriminatory reason for its decision;

---

[4] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

and (3) the plaintiff must then be given the opportunity to show that [the] defendant's stated reason was merely a pretext or discriminatory in its application.

[Ibid. (citing Dixon v. Rutgers, the State Univ. of N.J., 110 N.J. 432, 442 (1988)).]

To establish a prima facie case based on discriminatory discharge, the plaintiff must demonstrate: "(1) that plaintiff is in a protected class; (2) that plaintiff was otherwise qualified and performing the essential functions of the job; (3) that plaintiff was terminated; and (4) that the employer thereafter sought similarly qualified individuals for that job." Victor v. State, 203 N.J. 383, 409 (2010) (citing Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 596-97 (1988)). See also Meade, 249 N.J. at 328; Nini v. Mercer Cnty. Cmty. Coll., 406 N.J. Super. 547, 554 (App. Div. 2009). Further, to establish a prima facie case of age discrimination, "an employee must 'show that the prohibited consideration played a role in the decision-making process and that it had a determinative influence on the outcome of that process.'" Bergen Com. Bank v. Sisler, 157 N.J. 188, 207 (1999) (citations omitted).

Plaintiff argues she established a prima facie case of discrimination because she: (1) is a member of a protected group based on her African American race and her age of sixty-five; (2) was qualified for the position and performing the job at a level that met the employer's expectations prior to the

alleged incident; and (3) suffered an adverse action by being terminated. Moreover, plaintiff, relying on Victor, 203 N.J. at 383, claims she does not need to show that she was replaced with another employee. Rather, she contends that all she must show is a casual link between the protected activity and adverse action.

Plaintiff also argues that defendants' reasons for termination were pretextual and motivated by discriminatory intent.[5] She contends that circumstantial evidence shows that defendants' reasons for termination were "contradictory, weak, and filled with implausibility." Further, she notes that the draft notice from February 4, 2020 contained "harsh" words, stating that the department "cannot and will not tolerate your incidents of misconduct."

The trial court dismissed all of plaintiff's discrimination claims based in part on the lack of evidence of discriminatory intent. The trial court also reasoned that with respect to the gender/race discrimination counts, plaintiff failed to show evidence of pretext. The trial court also found that although plaintiff alleged numerous perceived deficiencies in the investigatory and

---

[5] We note that in her reply brief, plaintiff states that a young Hispanic worker "was treated differently." However, she does not provide specific information concerning the identity of the Hispanic employee or the circumstances pertaining to their treatment by the University.

A-3263-23

disciplinary action process, she failed to offer any evidence of discriminatory intent undergirding those alleged failures, concluding that plaintiff "has not proffered any evidence wherein a reasonable jury could find discriminatory intent behind the actions of defendants." The court further explained that "[t]o bridge this gap would require at least some evidence that the application of these policies as against her was rooted in discriminatory intent. There is no such evidence in this record."

Our own review of the evidence leads us to the same conclusion reached by the trial court. See Viscik v. Fowler Equip. Co., 173 N.J. 1, 14 (2002) (citing Erickson v. Marsh & McLennan Co., 117 N.J. 539, 561 (1990)) ("To prove pretext . . . a plaintiff must do more than simply show that the employer's reason was false; [they] must also demonstrate that the employer was motivated by discriminatory intent.").

IV.

We likewise are unpersuaded by plaintiff's contentions regarding her hostile work environment claim. We note at the outset that plaintiff's initial appeal brief does not address the hostile work environment claim that was dismissed on summary judgment. Plaintiff only raises this issue in her reply brief, which is improper. See Alpert, Goldberg, Butler, Norton & Weiss, P.C.

v. Quinn, 410 N.J. Super. 510, 527 n.5 (App. Div. 2009) (citing N.J. Citizens Underwriting Reciprocal Exch. v. Kieran Collins, D.C., LLC, 399 N.J. Super. 40, 50 (App. Div. 2008), certif. denied, 196 N.J. 344 (2008)) ("Technically, a new issue cannot be raised in a reply brief."); Bouie v. N.J. Dep't of Cmty. Affs., 407 N.J. Super. 518, 525 n.1 (App. Div. 2009) ("[A] party may not advance a new argument in a reply brief."); Bacon v. New Jersey State Dep't of Educ., 443 N.J. Super. 24, 38 (App. Div. 2015) (holding that by failing to raise their original jurisdiction argument in their initial brief, the plaintiffs waived the contention). We nonetheless choose to address her claim on the merits.

A hostile work environment claim requires consideration of "the totality of the circumstances." El-Sioufi, 382 N.J. Super. at 178. To establish a hostile work environment claim under the LAD, moreover, a plaintiff "must show that 'the complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive.'" Griffin v. City of E. Orange, 225 N.J. 400, 413-14 (2016) (quoting Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 603-04 (1993)).

For example, in Taylor v. Metzger, our Supreme Court found that a rational factfinder may conclude that under the circumstances a reasonable African-American could believe that, when the plaintiff's superior calls her a "jungle bunny," he thinks she has less worth as a person and is inferior to other employees because of her race. 152 N.J. 490, 506 (1998). The Court added that "a jury could reasonably find that the reasonable African American would believe that such a remark made in the presence of another supervising officer portrays an attitude of prejudice that injects hostility and abuse into the working environment and significantly alters the conditions of her employment." Ibid.

Similarly, in Shepherd v. Hunterdon Developmental Center, the Court found on a "closer question" that the plaintiffs successfully alleged "facts minimally necessary to form a hostile work environment claim sufficient to withstand the defendants' motion for summary judgment." 174 N.J. 1, 26 (2002). In that case, the plaintiffs' supervisors engaged in a pattern of "ill treatment and ultra-critical supervision," and in the case of one plaintiff, brought disciplinary charges against him. Id. at 9. The Court noted "the most troublesome aspect of the supervisors' conduct" is the alleged series of "what goes around, comes around" remarks. Id. at 26. It explained that when "stated and then repeated by a supervisor, those types of comments are susceptible to

26

either a benign or nefarious interpretation," however, against the backdrop of two co-employees' successful racial discrimination lawsuit against the employer, "the conduct starts to look more nefarious than benign." Ibid.

Applying these precedents to the present record, we conclude that plaintiff presented insufficient facts to establish a hostile work environment. We reiterate that the trial court dismissed all discrimination-related claims based on the lack of evidence of discriminatory intent. With respect to the hostile work environment claim, the trial court stated that while plaintiff showed that she was part of a protected class, she "failed to provide any evidence from which a reasonable factfinder could conclude that racial or gender bias was the basis for defendants' conduct."

Applying de novo review, we agree with the trial court's assessment and conclude that plaintiff failed to establish a prima facie case. Considering the record and providing all favorable inferences to her, plaintiff has not presented severe or pervasive conduct that would make a reasonable African-American woman in her sixties believe the conditions created a hostile work environment. See Griffin, 225 N.J. at 413-14 (quoting Lehmann, 132 N.J. at 603-04).

A-3263-23

V.

We next address plaintiff's contention that defendants violated her rights under the New Jersey Constitution, which guarantees that all persons "have certain natural and unalienable rights" including the fundamental right of "acquiring, possessing, and protecting property." N.J. Const. art. I, ¶ 1. Substantive due process claims are recognized under the New Jersey Constitution. State in the Interest of C.K., 233 N.J. 44, 73 (2018). Our courts employ the same standard as applied under the federal constitution. Roman Check Cashing, Inc. v. N.J. Dep't of Banking & Ins., 169 N.J. 105, 110 (2001).

In analyzing due process violations, New Jersey courts consider "the nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction." Greenberg v. Kimmelman, 99 N.J. 552, 567 (1985) (citations omitted). "The minimum requirements of due process . . . are notice and the opportunity to be heard." N.J. Div. of Child Prot. & Permanency v. J.R.-R., 248 N.J. 353, 369 (2021) (quoting Jamgochian v. State Parole Bd., 196 N.J. 222, 240 (2008)). State law determines whether a public employee has a property interest in public employment. Bishop v. Wood, 426 U.S. 341, 344 (1976).

A-3263-23

Paragraph 5 of Article I of the New Jersey Constitution proscribes discrimination based on religion, ancestry, and national origin. Specifically, the paragraph explicitly commands that "[n]o person shall be denied the enjoyment of any civil or military right, nor be discriminated against in the exercise of any civil or military right, nor be segregated in the militia or in the public schools, because of religious principles, race, color, ancestry or national origin." N.J. Const. art. I, ¶ 5.

Additionally, Article 1, Paragraph 18 of the New Jersey Constitution provides: "The People have the right freely to assemble together, to consult for the common good, to make known their opinions to their representatives, and to petition for redress of grievances." N.J. Const. art. I, ¶ 18.

A.

Plaintiff argues she was denied her substantive due process rights because Rutgers did not follow its own formal complaint and disciplinary procedures and essentially fabricated a formal complaint. She also argues she was suspended and ultimately terminated in violation of Rutgers' suspension policy that requires changes or reinstatement within five days. She also contends that the IA investigation sustained a charge of lying and misrepresentation without necessary proof of intent or knowledge as required in Directive 1:7-5(m).

Further, plaintiff contends Rutgers violated N.J.S.A. 11A:2-13, which states:

> Except as otherwise provided herein, before any disciplinary action in subsection a. (1), (2) and (3) of N.J.S.[A.] 11A:2-6 is taken against a permanent employee in the career service or a person serving a working test period, the employee shall be notified in writing and shall have the opportunity for a hearing before the appointing authority or its designated representative. The hearing shall be held within [thirty] days of the notice of disciplinary action unless waived by the employee. Both parties may consent to an adjournment to a later date.

As to the complaint and disciplinary violations, plaintiff specifically contends that Rutgers and the OEE violated Directive 1.6-5(m) by "falsifying a complaint form that falsely identified Rodriguez as the complainant when he was not" and violated the complaint form that "expressly required a signature" by writing the words "form prepared by OEE" and leaving it undated. This, she argues, offends judicial notions of fairness.

Plaintiff also makes procedural due process arguments. She alleges that she was deprived of property—her job and pension—without proper notice or an opportunity to discover and cross-examine witnesses. She alleges the PNDA never informed her of the misrepresentation and lies being investigated. Plaintiff also states that defendants did not present any documents to her that

30

mentioned Directive 1:6-5(m), rather they cited in the notice of disciplinary action incorrectly mention Directive 1:6-7(a).

The trial court rejected plaintiff's due process arguments. With respect to the Article 1, Paragraph 18 count, the trial court found "[t]here is simply no evidence in this record of any retaliatory conduct by defendants in response to any protected assembly, speech, or other aspects protected by this paragraph." As to plaintiff's arguments relating to Paragraph 5, the trial court incorporated its prior findings with respect to the dismissal of the LAD discrimination claims, emphasizing that plaintiff has offered no evidence in support of either racial or gender discrimination.

We agree with the trial court that plaintiff was afforded adequate notice and opportunity to be heard. While Rodriguez did not sign the complaint, he initiated the investigation and participated in the investigative process. Rutgers continued its investigation pursuant to its policies requiring OEE to investigate the allegations, even without a formal complaint. Further, plaintiff was given notice on September 29, 2019, before her October 1, 2019 suspension, regarding who made the allegations. In addition, on September 30, 2019, she was provided notice of the OEE investigation advising her she may consult with union representatives or legal counsel. On November 19, 2019, she received a letter

31

from the OEE investigator concerning the workplace violence allegation. Further, on February 4, 2020, plaintiff was served with the PNDA notifying her of the charges of both workplace violence and providing misleading information.

In sum, we are satisfied that plaintiff was given sufficient details about the allegations in the preliminary disciplinary notices. Considering the totality of the circumstances, we conclude that any deficiencies in the process were minor and do not constitute due process violations.

B.

We need only briefly address plaintiff's claim that defendants violated Paragraph 18 of Article I of the New Jersey Constitution. We are satisfied that plaintiff has not presented any evidence of retaliatory conduct in response to protected assembly, speech, or similar rights protected by Paragraph 18.

As to plaintiff's Paragraph 5 of Article I claim, we affirm the trial court's decision based on the same reasons that led us to affirm the summary judgment dismissal of plaintiff's LAD claims. Specifically, plaintiff presents only conclusory allegations, not evidence, to support a claim of racial or gender discrimination.

A-3263-23

## VI.

We turn next to plaintiff's claim that defendants "maliciously initiated false charges against plaintiff when the alleged victim did not want any charges brought." Plaintiff speculates that the decision to bring formal charges against her was not based on probable cause but rather motivated by malice.

The relevant statute, N.J.S.A. 2A:47A-1, provides:

> Any person who falsely and maliciously and without probable cause makes a complaint, orally or in writing, of unprofessional conduct against a member of any profession requiring a license or other authority to practice such profession, to any court or to any ethics and grievance committee, or to any board or other public body authorized to and having the right to hear such complaint and to act thereon or to recommend action thereon and to take or recommend the taking of disciplinary action against the person complained of . . . shall be liable for any and all damages suffered and sustained by the member of a profession so complained of, to be recovered in a civil action in the nature of an action at law for malicious prosecution.

The caselaw confirms that to succeed in an action for malicious prosecution, "the plaintiff must establish that the original suit (1) was instituted without reasonable or probable cause; (2) was motivated by malice; (3) terminated favorably to the plaintiff in the malicious prosecution action; and (4) resulted in a 'special grievance' to the plaintiff." Giri v. Rutgers Cas. Ins. Co.,

273 N.J. Super. 340, 347 (App. Div. 1994) (citing <u>Mayflower Industries v. Thor Corp.</u>, 15 N.J. Super. 139, 151-52 (Ch. Div. 1951)).

Here, as the trial court correctly found, plaintiff presents no evidence of malice. We stress that the absence of a formal complaint filed by Rodriguez does not establish that Rutgers' decision to bring charges was motivated by discriminatory intent or malice. Defendants found plaintiff to be untruthful during an internal investigation. We see no malice whatsoever in the decision to formally condemn such employee misconduct.

VII.

Nor are we persuaded by plaintiff's contentions relating to the dismissal of her counts alleging that defendants cast plaintiff in a false light, defamed her, and libeled her. Plaintiff contends that defendants made accusations with a complete disregard for the truth and the harm to her.

The common law right to privacy recognizes the tort of false light. <u>Leang v. Jersey City Bd. of Educ.</u>, 198 N.J. 557, 589 (2009). The tort of false light has two elements: "(1) 'the false light in which the other was placed would be highly offensive to a reasonable person'; and (2) 'the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'" <u>Ibid.</u> (quoting <u>Romaine v. Kallinger</u>, 109

34

N.J. 282, 294 (1988)). "[A] false-light claim requires that the offending party make 'a major misrepresentation of [the] plaintiff's character, history, activities, or beliefs.'" G.D. v. Kenny, 205 N.J. 275, 308 (2011) (quoting Romaine, 109 N.J. at 295). "'[A] fundamental requirement of the false light tort is that the disputed publicity be in fact false, or else at least have the capacity to give rise to a false public impression as to the plaintiff.'" Ibid. (quoting Romaine, 109 N.J. at 294). "Simply put, false light invasion of privacy is 'essentially [a claim] of defamation.'" Herman v. Muhammad, 480 N.J. Super. 480, 494 (App. Div. 2024) (alteration in original) (quoting Swan v. Boardwalk Regency Corp., 407 N.J. Super. 108, 121 (App. Div. 2009)).

To establish a prima facie case of defamation, there must be: "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher." DeAngelis v. Hill, 180 N.J. 1, 12-13 (2004) (citing Restatement (Second) of Torts § 558 (1977)). "A defamatory statement, generally, is one that subjects an individual to contempt or ridicule, one that harms a person's reputation by lowering the community's estimation of [them] or by deterring others from wanting to associate or deal

with [them]." Durando v. Nutley Sun, 209 N.J. 235, 248-49 (2012) (quoting Kenny, 205 N.J. at 293).

"There must be a showing of actual malice by a defendant where the statement is about a plaintiff who is a public figure or relates to an issue of public concern." Muhammad, 480 N.J. Super. at 492 (citations omitted) (holding that the actual malice standard applies when the conduct arose in the context of the plaintiff teaching in a public school); see also Hornberger v. Am. Broad. Companies, Inc., 351 N.J. Super. 577, 597 (App. Div. 2002) (applying the actual malice standard to a police officer). "To satisfy the actual-malice standard, a plaintiff must show by clear and convincing evidence that the publisher either knew that the statement was false or published with reckless disregard for the truth." Neuwirth v. State, 476 N.J. Super. 377, 391 (App. Div. 2023) (quoting Lynch v. N.J. Educ. Ass'n, 161 N.J. 152, 165 (1999)). "That is a high standard." Ibid.

Further, "[t]he [actual malice] test is subjective, not objective, and involves analyzing the thought processes of the particular defendant." Durando, 209 N.J. at 251 (citing Costello v. Ocean Cnty. Observer, 136 N.J. 594, 617 (1994)). A "[m]ere failure to investigate all sources" does not demonstrate actual malice. Lynch, 161 N.J. at 172 (citing Costello, 136 N.J. at 615).

Furthermore, "[t]he allegedly defamatory statements must be viewed in the context of the whole publication." Petro-Lubricant Testing Labs., Inc. v. Adelman, 233 N.J. 236, 254 (2018) (citing Herrmann v. Newark Morning Ledger Co., 48 N.J. Super. 420, 431 (App. Div. 1958)). "A defamatory statement is published when it is communicated, either intentionally or negligently, to one other than the person defamed." Abella v. Barringer Res., Inc., 260 N.J. Super. 92, 99 (Ch. Div. 1992) (citing Restatement (Second) of Torts § 577(1)).

Plaintiff claims support for these theories of liability from the fact that the November 19, 2019 OEE letter of determination stated,

> Your failure to act in accordance with the above-described sections of the written directive system reflects poorly on you as an employee of the department and further challenged its efficient operation. The department cannot and will not tolerate your incidents of misconduct and violations of the Department's Written Directive System, including those committed in this instance.

The trial court found that plaintiff failed to show that defendants maliciously published untruthful statements about her. We agree.

We add that even assuming for the sake of argument that the conclusions defendants reached in the internal investigations were false, plaintiff does not identify who the findings were published to beyond plaintiff and defendants.

37

That circumstance alone supports the trial court's decision to dismiss the false light and related libel counts.

## VIII.

Plaintiff argues in her appeal brief that her intentional infliction of emotional distress (IIED) and implied covenant of good faith and fair dealing claims should not have been dismissed. The trial court's written decision does not address the merits of plaintiff's IIED count or implied covenant of good faith and fair dealing count because those counts were dismissed in an earlier order than the one being challenged in this appeal. Rule 2:5-1(f)(2)(ii) requires appellants in civil actions to designate the judgment, decision, action, or rule, or part thereof, appealed from in the notice of appeal. Because plaintiff does not include the October order in her notice of appeal, we chose not to address the merits of these issues. See Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002) (limiting review solely to the order designated in the notice of appeal).

Finally, we note that in her appeal brief, plaintiff does not address either the standard for reconsideration or why the trial court's denial of the motion is allegedly erroneous. Because we conclude the trial court properly granted summary judgment in defendants' favor and properly denied plaintiff's motion

A-3263-23

for partial summary judgment, we also affirm the denial of plaintiff's' motion for reconsideration. To the extent we have not specifically addressed them, any remaining arguments made by plaintiff lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division